Wells Coporation *v.* Aetna Casualty & Surety Co., Appellant.

524

Argued October 22, 1929.

Before PORTER, P. J.,
TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and
BALDRIGE, JJ.

*Thomas F. Mount,* and with him *Joseph W. Henderson,* of *Rawle and Henderson,* for appellant.—The interpretation of the policy was solely for the court: Baldwin v. Magen, 279 Pa. 302.

*Randolph W. Childs,* and with him *Paul Van Reed Miller,* for appellee.—If there be any ambiguity in the conditions of a policy of insurance, these conditions are to be taken most strongly against the insurer and in favor of the insured: Francis v. Prudential Ins. Co., 243 Pa. 380; Primrose v. Casualty Co., 232 Pa. 210.

OPINION BY CUNNINGHAM, J., January 29, 1930:

The action below was assumpsit upon a bond dated September 21, 1926, in the penal sum of $1,500, given by defendant to secure the fidelity of Robert Hampson Moore, employed by the plaintiff as manager of its roadside restaurant at Hallowell, Pa. By its terms defendant bound itself to pay to the corporation "such pecuniary loss as the employer shall sustain of money or other personal property (including that for which the employer is legally responsible) through the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misappropriation or any other dishonest or criminal act committed by the employe directly or in connivance with others while such employe holds any position at any location in the service of the employer."

There was no change in the position held by Moore or in the location of the restaurant, of which he was manager, prior to an alleged breach on April 26, 1927, upon which date the bond was in full force and effect. Plaintiff alleged that it then sustained a pecuniary loss, exceeding the amount of the bond, in the form of damages to a Stutz automobile (owned by it and used for demonstration purposes), resulting from certain criminal acts committed by Moore in connivance with James A. Conner, also employed by plaintiff, but in a separate branch of its business. The criminal acts charged were making use of and operating the automobile without the knowledge or consent of the owner and operating it while under the influence of intoxicat-

ing liquor, in violation of section 23 of the Motor Vehicle Act of June 30, 1919, P. L. 678, with the result that it was practically demolished by colliding with the stone wall of a bridge on the Easton Highway. The jury returned a verdict for plaintiff in the sum of $1,675, the amount of the bond, with interest from the date defendant disclaimed liability. The learned trial judge denied defendant's motion for a new trial and discharged its rule for judgment n. o. v.; hence this appeal by it.

Conceding that the acts shown by the testimony to have been committed by Moore were criminal and were the proximate cause of the damages to the automobile, the controlling question is whether the pecuniary loss sustained by plaintiff resulted from any act or acts against the commission of which the bond indemnified plaintiff or whether it was due to acts committed outside the course of the employment in which defendant insured Moore's fidelity. In other words, whether the possibility of the loss which occurred in this case was within the contemplation of the parties when the contract was made.

Reading the testimony in the light most favorable to plaintiff these material facts appear: The plaintiff corporation seems to have been engaged in two distinct lines of business—operating a roadside restaurant and selling Stutz automobiles. The garage and sales room in which the latter business was carried on were separate and about one hundred yards distant from the restaurant. Moore was employed as manager of the restaurant and Conner as a salesman of automobiles. As such Conner had possession of the automobile in question and usually kept it at his home over night. The president of the plaintiff corporation testified that he discharged Conner about three o'clock on the afternoon of April 26, 1927; this was denied by Conner, but we must accept plaintiff's version. About four o'clock

of the same afternoon Conner, while intoxicated, entered the car which was then standing in front of the garage and sales room; Moore also got into the car and Conner drove it north on the Easton Highway. They were seen three times on the highway between Hallowell and Doylestown by the motorman of a trolley car operating between Doylestown and Willow Grove and, upon one occasion at least, Moore was driving. The last time the motorman observed them was at Doylestown when he saw Moore getting into the machine in an intoxicated condition and taking the wheel. Shortly after leaving Doylestown the car, while being driven by Moore around a sharp curve approaching a bridge, at a speed of approximately sixty miles an hour, crashed into the bridge wall and the occupants were thrown out. The evidence was conclusive that both were under the influence of intoxicating liquor at the time of the accident.

The application made by plaintiff for the bond consisted of a series of questions and answers which it was agreed should constitute the basis and form a part of the consideration of the bond. In this application the employer's "line of business" is described as "restaurant" and there is no indication in any part of the application that it was also engaged in the automobile business. The title of Moore's position is designated as "manager" and his duties are described as "general management of roadside restaurant" at $25 per week, plus two per cent. of gross sales. It is further stated that the largest amount of cash likely to be under his control at any one time would not exceed $500 and that for only a day at a time. In so far as the custody of personal property is concerned it is stated that such property will consist of "ice cream, bottled goods" etc., to the value of $500. No notice or intimation of any kind was given defendant that the employe would have any duties in connection

with the custody or operation of an automobile. Moore had not previously been under bond and the reason assigned for the desire to insure his fidelity was that he was being promoted from salesman to manager. The president of plaintiff corporation testified that Moore's employment was "manager of the restaurant;" that he had no authority to drive any car and "had nothing whatever to do with the automobile end of the business;" and that he had never driven any of plaintiff's cars prior to the date of the accident. It is clear under the evidence that the loss now sought to be recovered was not sustained "through the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misappropriation or any other dishonest or criminal act committed by the employe directly or in connivance with others" while performing any of the duties specifically stated or implied in the application describing the employment in connection with which his employer sought indemnity. It is equally clear that, when the automobile was damaged, Moore was not performing any act connected in any way with his duties as manager of the restaurant. The bond specifies certain dishonest or criminal acts which would naturally result in pecuniary loss to the employer if committed in the performance of the duties specified in the application and also includes in its terms "any other dishonest or criminal act committed by the employe directly or in connivance with others." It is contended that this language is broad enough to cover the acts shown to have been committed. If the acts which caused the loss in this case had been shown by the evidence to have had any connection with the performance of the employe's duties as manager of the restaurant the familiar doctrine—that a condition in a policy of insurance, being in the language of the company, must, if there be any ambiguity in it, be taken most strongly against it—would be applicable and the words "any other dis-

honest or criminal act'' might be construed to include not merely criminal acts of the same kind or species with those specifically enumerated but also any dishonest or criminal. act resulting in pecuniary loss to the employer's restaurant business. An insured is not to be deprived of a claim to indemnity, which it was his object to secure, through a narrow construction of the terms of the policy, but we are unable to see from the record as a whole that plaintiff had any intention of obtaining indemnity against the result of any acts of the employe other than those performed by him as manager of its restaurant. The trial court submitted to the jury the question whether such criminal conduct as Moore had been guilty of was ''included in the language of that bond'' or ''supposed to be covered by it.'' We think the construction of the contract was for the court and that binding instructions for defendant should have been given upon the ground that plaintiff had not shown the commission of any dishonest or criminal act by Moore in the performance of the duties specified by plaintiff in its application for the bond.

The case of Fidelity and Casualty Company of New York v. Blount Plow Works, 78 Ind. App. 529, was cited by the court below and is urged upon us by counsel for appellee, but we think that case is distinguishable upon its facts. There the employer seems to have been engaged in but one line of business and the employe, whose fidelity was insured, was its general manager. Contrary to instructions he took from the company's garage after business hours a car, owned by it and furnished for the exclusive use of another employe, which was later stolen by a third person. It was held that the act of taking and using the automobile was a ''wrongful abstraction'' of the same within the terms of the bond in that case and that no dishonesty need be shown. Under the bond in the pres-

ent case the acts insured against are those specifically mentioned and "any other dishonest or criminal act;" dishonesty or criminality in the performance of the duties contemplated by the contract is an essential ingredient in a suit thereunder. Again, this car was not furnished for use by anyone in connection with the restaurant business. If the bond had been given to secure the fidelity of Conner, or if the car had been furnished for any use or purpose in connection with the operation of the restaurant, we would have a different case.

We cannot reach the conclusion that either of the parties to this contract had in contemplation when it was made a possible loss arising from such circumstances as the evidence discloses and therefore sustain the third assignment complaining of the denial of defendant's motion for judgment n. o. v. This disposition of the case renders it unnecessary to discuss the other questions raised by the assignments and argued in the briefs.

The judgment is reversed and is here entered for the defendant.